(Slip Opinion) OCTOBER TERM, 2010 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WALL, DIRECTOR, RHODE ISLAND DEPARTMENT OF CORRECTIONS *v.* KHOLI

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 09–868.   Argued November 29, 2010—Decided March 7, 2011

Respondent was convicted in Rhode Island Superior Court on 10 counts of first-degree sexual assault and sentenced to consecutive life terms. His conviction became final on direct review on May 29, 1996. In addition to his direct appeal, he filed two relevant state motions. One, a May 16, 1996, motion to reduce his sentence under Rhode Island Superior Court Rule of Criminal Procedure 35, was denied. The State Supreme Court affirmed on January 16, 1998. The second, a state postconviction relief motion, was also denied. That decision was affirmed on December 14, 2006. When respondent filed his federal habeas petition, his conviction had been final for over 11 years. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) generally requires a federal petition to be filed within one year of the date on which a judgment became final, 28 U. S. C. §2244(d)(1)(A), but "a properly filed application for State post-conviction or other collateral review" tolls that period, §2244(d)(2). Respondent's postconviction relief motion tolled the period for over nine years, but his Rule 35 motion must also trigger the tolling provision for his habeas petition to be timely. The District Court dismissed the petition as untimely, adopting the Magistrate Judge's conclusion that the Rule 35 motion was not "a properly filed application for . . . collateral review" under §2244(d)(2). The First Circuit reversed.

*Held*:

   1. The phrase "collateral review" in §2244(d)(2) means judicial review of a judgment in a proceeding that is not part of direct review. Pp. 4–8.

     (a) The parties agree that the answer to the question whether a motion to reduce sentence is an "application for State post-conviction

or other collateral review" turns on the meaning of "collateral review," but they disagree about what that meaning should be.  Pp. 4–5.

(b) Because "collateral review" is not defined in AEDPA, the Court begins with the ordinary understanding of that phrase.  By definition, "collateral" describes something that is "indirect," not direct.  3 Oxford English Dictionary 473.  This suggests that "collateral" review is not part of direct review.  This conclusion is supported by the definition of the related phrase "collateral attack" and by the Court's prior use of the term "collateral" to describe proceedings that are separate from the direct review process.  Pp. 5–7.

(c) The term "review" is best understood as a "judicial reexamination."  Webster's Third New International Dictionary 1944.  Pp. 7–8.

2. A Rule 35 motion to reduce sentence under Rhode Island law is an application for "collateral review" that triggers AEDPA's tolling provision.  Pp. 8–15.

(a) Rhode Island's Rule 35 is similar to the version of Federal Rule of Criminal Procedure 35 in effect before the federal Sentencing Reform Act of 1984.  The Rule permits a court to provide relief, as relevant here, to "reduce any sentence," and it is generally addressed to the sound discretion of the sentencing justice.  Under the limited review available, an appellate court may disturb the trial justice's decision if the sentence imposed is without justification and is grossly disparate when compared to sentences for similar offenses.  Pp. 8–9.

(b) Keeping these principles in mind, a Rule 35 sentence reduction proceeding is "collateral."  The parties agree that the motion is not part of the direct review process, and both this Court and lower federal courts have described a motion to reduce sentence under old Federal Rule 35 as invoking a "collateral" remedy.  Therefore, it is not difficult to conclude that Rhode Island's motion to reduce sentence is "collateral."  A Rule 35 motion also calls for "review" of the sentence within §2244(d)(2)'s meaning.  The decision to reduce a sentence involves judicial reexamination of the sentence to determine whether a more lenient sentence is proper.  The trial justice is guided by several sentencing factors in making that decision.  And those factors are also used by the State Supreme Court in evaluating the trial justice's justifications for the sentence.  Pp. 9–11.

(c) Rhode Island's arguments in support of its opposing view that "collateral review" includes only "legal" challenges to a conviction or sentence, and thus excludes motions for a discretionary sentence reduction, are unpersuasive.  Nor does "collateral review" turn on whether a motion is part of the same criminal case.  Pp. 11–15.

582 F. 3d 147, affirmed.

Syllabus

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined, and in which SCALIA, J., joined, except as to footnote 3. SCALIA, J., filed an opinion concurring in part.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–868

_____

## ASHBEL T. WALL, II, DIRECTOR, RHODE ISLAND DEPARTMENT OF CORRECTIONS, PETI-TIONER *v.* KHALIL KHOLI

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[March 7, 2011]

JUSTICE ALITO delivered the opinion of the Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" tolls the 1-year limitation period for filing a federal habeas petition. 28 U. S. C. §2244(d)(2). The question in this case is whether a motion to reduce sentence under Rhode Island law tolls the limitation period, thereby rendering respondent Khalil Kholi's federal habeas petition timely. We hold that the phrase "collateral review" in §2244(d)(2) means judicial review of a judgment in a proceeding that is not part of direct review. Because the parties agree that a motion to reduce sentence under Rhode Island law is not part of the direct review process, we hold that respondent's motion tolled the AEDPA limitation period and that his federal habeas petition was therefore timely.

I

A

In 1993, respondent was convicted in Rhode Island

Superior Court on 10 counts of first-degree sexual assault, and he was sentenced to consecutive terms of life imprisonment. Respondent raised various challenges to his conviction on direct appeal, but the Supreme Court of Rhode Island affirmed his conviction. See *State* v. *Kholi*, 672 A. 2d 429, 431 (1996). The parties agree that respondent's conviction became final on direct review when his time expired for filing a petition for a writ of certiorari in this Court. Brief for Petitioner 7, n. 4; Brief for Respondent 3, n. 1; 582 F. 3d 147, 150 (CA1 2009); see generally *Jimenez* v. *Quarterman*, 555 U. S. 113, ___ (2009) (slip op., at 6). That date was May 29, 1996. See this Court's Rules 13.1, 13.3, 30.1.

In addition to taking a direct appeal, respondent filed two state motions that are relevant to our decision. The first, filed on May 16, 1996, was a motion to reduce sentence under Rule 35 of the Rhode Island Superior Court Rules of Criminal Procedure.[1] App. 8. In that motion, respondent asked the trial court to "reconsider its prior determination" and "order that his life sentences run concurrently." *State* v. *Kholi*, 706 A. 2d 1326 (R. I. 1998) (order). Concluding that "the sentence imposed was ap-

_____

[1] This Rule provides in relevant part:

"The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it *may reduce any sentence* when a motion is filed within one hundred and twenty (120) days after the sentence is imposed, or within one hundred and twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal, or within one hundred and twenty (120) days after receipt by the court of a mandate or order of the Supreme Court of the United States issued upon affirmance of the judgment, dismissal of the appeal, or denial of a writ of certiorari. The court shall act on the motion within a reasonable time, provided that any delay by the court in ruling on the motion shall not prejudice the movant. The court may reduce a sentence, the execution of which has been suspended, upon revocation of probation." R. I. Super. Ct. Rule Crim. Proc. 35(a) (2010) (emphasis added).

propriate," the hearing justice denied the Rule 35 motion. *Ibid.* On January 16, 1998, the State Supreme Court affirmed and observed that the facts clearly justified the sentence. *Id.,* at 1326–1327.

On May 23, 1997, while the Rule 35 motion was pending, respondent also filed an application for state postconviction relief, see R. I. Gen. Laws 10–9.1–1 *et seq.* (Lexis 1997) (titled "Post Conviction Remedy"), which challenged his conviction. The trial court denied this motion as well, and the State Supreme Court affirmed that decision on December 14, 2006. See *Kholi* v. *Wall*, 911 A. 2d 262, 263–264 (R. I. 2006).

B

Respondent filed a federal habeas petition in the District of Rhode Island on September 5, 2007. App. 3. By that time, his conviction had been final for over 11 years. AEDPA generally requires a federal habeas petition to be filed within one year of the date on which the judgment became final by the conclusion of direct review. 28 U. S. C. §2244(d)(1)(A). But the 1-year limitation period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." §2244(d)(2).

There is no dispute that respondent's application for postconviction relief tolled the limitation period for over nine years—from May 23, 1997, through December 14, 2006. 582 F. 3d, at 151. Even after subtracting that stretch of time from the 11-year period, however, the period between the conclusion of direct review and the filing of the federal habeas petition still exceeds one year. Thus, in order for respondent's petition to be timely, the Rule 35 motion to reduce sentence must also trigger the tolling provision.

Respondent's federal habeas petition was referred to a Magistrate Judge for a report and recommendation, and

the Magistrate Judge concluded that the Rule 35 motion was not a "'properly filed application for post-conviction or other collateral review'" under §2244(d)(2) because it was "a 'plea of leniency,' and not a motion challenging the legal sufficiency of his sentence." No. CA 07–346S, 2008 WL 60194, *4 (R. I., Jan. 3, 2008). The District Court adopted the Magistrate Judge's report and recommendation and therefore dismissed the federal habeas petition as untimely. See *id.,* at *1. On appeal, the First Circuit reversed. 582 F. 3d 147.

The Courts of Appeals are divided over the question whether a motion to reduce sentence tolls the period of limitation under §2244(d)(2).[2] We granted certiorari to answer this question with respect to a motion to reduce sentence under Rhode Island law. 560 U. S. ___ (2010).

## II

### A

AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus. §2244(d)(1). This period runs "from the latest of" four specified dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." §2244(d)(1)(A); see also *Jimenez, supra,* at ___ (slip op., at 6) (explaining when "the conclusion of direct review occurs"). The limitation period is tolled, however, during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the

---

[2] Compare *Alexander* v. *Secretary, Dept. of Corrections*, 523 F. 3d 1291, 1297 (CA11 2008) (motion to reduce sentence does not toll limitation period); *Hartmann* v. *Carroll*, 492 F. 3d 478, 484 (CA3 2007) (same); *Walkowiak* v. *Haines*, 272 F. 3d 234, 239 (CA4 2001) (same), with 582 F. 3d, at 156 (case below) (motion to reduce sentence tolls); *Robinson* v. *Golder*, 443 F. 3d 718, 720–721 (CA10 2006) *(per curiam)* (same).

pertinent judgment or claim." §2244(d)(2). The question in this case is whether a motion for reduction of sentence under Rhode Island's Rule 35 is an "application for State post-conviction or other collateral review."

The parties agree that the answer to this question turns on the meaning of the phrase "collateral review," see Brief for Petitioner 19; Brief for Respondent 12–13, but they disagree about the definition of that term. Rhode Island argues that "collateral review" includes only "legal" challenges to a conviction or sentence and thus excludes motions seeking a discretionary sentence reduction. Respondent, on the other hand, maintains that "collateral review" is "review other than review of a judgment in the direct appeal process" and thus includes motions to reduce sentence. Brief for Respondent 17. We agree with respondent's understanding of "collateral review."

### B

"Collateral review" is not defined in AEDPA, and we have never provided a comprehensive definition of that term. See *Duncan* v. *Walker*, 533 U. S. 167, 175–178 (2001). We therefore begin by considering the ordinary understanding of the phrase "collateral review." See *Williams* v. *Taylor*, 529 U. S. 420, 431 (2000) ("We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import" (internal quotation marks omitted)); see also *Carey* v. *Saffold*, 536 U. S. 214, 219 (2002) (considering the ordinary meaning of the word "pending" in §2244(d)(2)).

The term "collateral," in its "customary and preferred sense," *Williams*, *supra,* at 431, means "[l]ying aside from the main subject, line of action, issue, purpose, etc.; . . . subordinate, indirect," 3 Oxford English Dictionary 473 (2d ed. 1989) (hereinafter OED); see also Webster's Third New International Dictionary 444 (1993) (hereinafter

Webster's) ("accompanying as . . . secondary," "indirect," or "ancillary"). By definition, something that is "collateral" is "indirect," not direct. 3 OED 473. This suggests that "collateral" review is review that is "[l]ying aside from the main" review, *i.e.,* that is not part of direct review. See *ibid.*

The definition of the related phrase "collateral attack" points in the same direction. A "collateral attack" is "[a]n attack on a judgment in a proceeding *other than a direct appeal.*" Black's Law Dictionary 298 (9th ed. 2009) (emphasis added); cf. Wash. Rev. Code §10.73.090(2) (2008) (defining "collateral attack" as "any form of postconviction relief other than a direct appeal"). This usage buttresses the conclusion that "collateral review" means a form of review that is not part of the direct appeal process.

C

Our prior usage of the term "collateral" also supports this understanding. We have previously described a variety of proceedings as "collateral," and all of these proceedings share the characteristic that we have identified, *i.e.,* they stand apart from the process of direct review.

For example, our cases make it clear that habeas corpus is a form of collateral review. We have used the terms habeas corpus and "collateral review" interchangeably, see, *e.g., Murray* v. *Carrier,* 477 U. S. 478, 482–483 (1986), and it is well accepted that state petitions for habeas corpus toll the limitation period, *e.g., Rhines* v. *Weber,* 544 U. S. 269, 272 (2005) ("[T]he 1-year statute of limitations . . . was tolled while Rhines' state habeas corpus petition was pending").

We have also described *coram nobis* as a means of "collateral attack," see, *e.g., United States* v. *Morgan,* 346 U. S. 502, 510–511 (1954) (internal quotation marks omitted), and we have used the term "collateral" to describe proceedings under 28 U. S. C. §2255 and a prior version of

Rule 35 of the Federal Rules of Criminal Procedure. In *United States* v. *Robinson*, 361 U. S. 220 (1960), we distinguished between the process of direct appeal and "a number of collateral remedies," including Federal Rule 35 motions, §2255 motions, and *coram nobis*. *Id.,* at 230, n. 14. Similarly, in *Bartone* v. *United States*, 375 U. S. 52 (1963) *(per curiam)*, we drew a distinction between a "[d]irect attack" on a criminal judgment and "collateral proceedings," such as Rule 35, habeas corpus, and §2255 proceedings. *Id.*, at 53–54.

All of the proceedings identified in these prior opinions as "collateral" are separate from the direct review process, and thus our prior usage of the term "collateral" buttresses the conclusion that "collateral review" means a form of review that is not direct.

## D

Of course, to trigger the tolling provision, a "collateral" proceeding must also involve a form of "review," but the meaning of that term seems clear. "Review" is best understood as an "act of inspecting or examining" or a "judicial reexamination." Webster's 1944; see also Black's, *supra,* at 1434 ("[c]onsideration, inspection, or reexamination of a subject or thing"); 13 OED 831 ("[t]o submit (a decree, act, etc.) to examination or revision"). We thus agree with the First Circuit that "'review' commonly denotes 'a looking over or examination with a view to amendment or improvement.'" 582 F. 3d, at 153 (quoting Webster's 1944 (2002)). Viewed as a whole, then, "collateral review" of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process.

## III

We now apply this definition of "collateral review" to a Rule 35 motion to reduce sentence under Rhode Island

law.

## A

Rule 35 of the Rhode Island Rules of Criminal Procedure is much like the version of Federal Rule of Criminal Procedure 35 that was in force prior to the enactment of the federal Sentencing Reform Act of 1984 and the promulgation of the Federal Sentencing Guidelines. See *State* v. *Byrnes*, 456 A. 2d 742, 744 (R. I. 1983) *(per curiam);* Reporter's Notes following R. I. Super. Ct. Rule Crim. Proc. 35, R. I. Court Rules Ann., p. 620 (Lexis 2010). Under the Rhode Island Rules, a Rule 35 motion permits a court to provide relief from a sentence in three ways: A court "may" "correct an illegal sentence," "correct a sentence imposed in an illegal manner," and "reduce any sentence." R. I. Super. Ct. Rule Crim. Proc. 35(a); see n. 1, *supra.* In this case, respondent filed a motion to reduce his sentence, which permits a trial justice to decide "'"on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any reason, unduly severe."'" *State* v. *Ruffner*, 5 A. 3d 864, 867 (R. I. 2010) (quoting *State* v. *Mendoza*, 958 A. 2d 1159, 1161 (R. I. 2008)); see also Reporter's Notes following R. I. Super. Ct. Rule Crim. Proc. 35, R. I. Court Rules Ann., at 620–621. Rhode Island courts have, at times, referred to such a motion as a "'plea for leniency.'" *Ruffner*, *supra,* at 867 (quoting *Mendoza*, *supra*, at 1161).

A Rule 35 motion is made in the Superior Court, and it is generally heard by the same trial justice who sentenced the defendant. *Byrnes*, *supra,* at 745. The Rhode Island Supreme Court has explained that a motion to reduce sentence is "'addressed to the sound discretion of the trial justice'" and that appellate review of the trial justice's decision is limited. *Ruffner*, *supra,* at 867 (quoting *Mendoza*, *supra,* at 1161). An appellate court may nevertheless disturb the trial justice's decision "when the trial

justice has imposed a sentence that is without justification and is grossly disparate from other sentences generally imposed for similar offenses." *Ruffner*, *supra,* at 867 (quoting *State* v. *Coleman*, 984 A. 2d 650, 654 (R. I. 2009); internal quotation marks omitted); see also *Ruffner*, *supra,* at 867 (asking whether trial justice "abuse[d] his discretion").

B

With these principles in mind, we consider whether Rhode Island's Rule 35 motion to reduce sentence is an application for "collateral review."

The first—and the critical—question is whether a Rhode Island Rule 35 sentence reduction proceeding is "collateral." Respondent and Rhode Island agree that such a motion is not part of the direct review process. Moreover, we have previously referred to a motion to reduce sentence under old Rule 35 of the Federal Rules of Criminal Procedure as invoking a "collateral" remedy, see *Robinson, supra,* at 230, n. 14, and Rhode Island's Rule 35 motion to reduce sentence is "substantially similar" to former Federal Rule 35, *Byrnes*, *supra,* at 744. Lower courts have also referred to Federal Rule 35 sentence reduction motions as "collateral." See, *e.g., Fernandez* v. *United States*, 941 F. 2d 1488, 1492 (CA11 1991) ("Fernandez initiated a collateral attack on his sentence with a Rule 35(b) motion to reduce his sentence" under the old Federal Rule). We thus have little difficulty concluding that a Rhode Island sentence reduction proceeding is "collateral."[3]

─────────

[3] We can imagine an argument that a Rhode Island Rule 35 proceeding is in fact part of direct review under §2244(d)(1) because, according to the parties, defendants in Rhode Island cannot raise any challenge to their sentences on direct appeal; instead, they must bring a Rule 35 motion. See, *e.g., State* v. *Day*, 925 A. 2d 962, 985 (R. I. 2007) ("It is well settled in this jurisdiction that a challenge to a criminal sentence must begin with the filing of a [Rule 35] motion . . . . [W]e will not consider the validity or legality of a sentence on direct appeal unless

Not only is a motion to reduce sentence under Rhode Island law "collateral," but it also undoubtedly calls for "review" of the sentence. The decision to reduce a sentence, while largely within the discretion of the trial justice, involves judicial reexamination of the sentence to determine whether a more lenient sentence is proper.[4] When ruling on such a motion, a trial justice is guided by several factors, including "(1) the severity of the crime, (2) the defendant's personal, educational, and employment background, (3) the potential for rehabilitation, (4) the element of societal deterrence, and (5) the appropriateness of the punishment." *State* v. *Mollicone*, 746 A. 2d 135, 138 (R. I. 2000) *(per curiam)* (internal quotation marks omitted); see also *Ruffner*, *supra,* at 867; *Coleman*, *supra,* at 655. On appeal from a trial justice's decision on a motion to reduce sentence, the Supreme Court of Rhode Island evaluates the trial justice's justifications in light of the relevant sentencing factors to determine whether a sentence is "without justification" and "grossly disparate from other sentences." *Ruffner*, *supra,* at 867 (internal quotation marks omitted).[5] This process surely qualifies as

––––––––––

extraordinary circumstances exist" (internal quotation marks omitted)); *State* v. *McManus*, 990 A. 2d 1229, 1238 (R. I. 2010) (refusing to consider Eighth Amendment challenge on direct review because "[t]o challenge a criminal sentence, the defendant must first file a motion to reduce in accordance with Rule 35"); see also *Jimenez* v. *Quarterman*, 555 U. S. 113, ___ (2009) (slip op., at 6–7). That issue has not been briefed or argued by the parties, however, and we express no opinion as to the merit of such an argument. Even if we were to assume that a Rhode Island Rule 35 motion is part of direct review, our disposition of this case would not change: Respondent's habeas petition still would be timely, because the limitation period would not have begun to run until after the Rule 35 proceedings concluded.

[4] A motion to reduce sentence is unlike a motion for postconviction discovery or a motion for appointment of counsel, which generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment.

[5] *E.g., State* v. *Coleman*, 984 A. 2d 650, 657 (R. I. 2009) ("Given these

"review" of a sentence within the meaning of §2244(d)(2).

We thus hold that a motion to reduce sentence under Rhode Island law is an application for "collateral review" that triggers AEDPA's tolling provision.

## IV

In resisting this interpretation, Rhode Island advances several arguments that we find unpersuasive.

The first of these arguments begins by observing that, whenever our opinions have used the precise phrase "collateral review," the proceeding in question was one challenging the "lawfulness" of a prior judgment, Brief for Petitioner 21–22, such as a §2254 or §2255 action, see *id.*, at 25. Rhode Island argues that Congress, in enacting AEDPA, must be presumed to have been aware of this usage and must have intended the phrase to carry this narrow meaning.

This argument reads far too much into these prior references to "collateral review." While our opinions have used the phrase "collateral review" to refer to proceedings that challenge the lawfulness of a prior judgment, we have never suggested that the phrase may properly be used to describe only proceedings of this type. In addition, Rhode Island overlooks opinions describing a motion to reduce sentence as "collateral." *E.g., Robinson*, 361 U. S., at 230, n. 14; *Fernandez, supra,* at 1492; see also 1 D. Wilkes,

―――――――

factors, and the trial justice's exhaustive explanation of her reasoning in sentencing Mr. Coleman, we hold it was not an abuse of her discretion to order Mr. Coleman to serve consecutive sentences"); *State* v. *Ferrara*, 818 A. 2d 642, 645 (R. I. 2003) *(per curiam)* ("[M]itigating circumstances clearly are not present in this case"); *State* v. *Rossi*, 771 A. 2d 906, 908 (R. I. 2001) (order) ("Based upon [the court's] review of the record," the sentence "was not excessive and was justified under the circumstances," namely, "the abhorrent conduct of [the] defendant" and "the permissible penalty range" under the statute); *State* v. *Mollicone*, 746 A. 2d 135, 138 (R. I. 2000) *(per curiam)* ("[T]he trial justice was aware of these factors and applied them correctly").

State Postconviction Remedies and Relief Handbook §§1:2, 1:7, pp. 2, 15 (2010) (characterizing a motion to reduce sentence as a "collateral" or "postconviction" remedy).

In a related argument, Rhode Island notes that several other AEDPA provisions use the term "collateral review" to refer to proceedings that involve a challenge to the lawfulness of a state-court judgment, see 28 U. S. C. §§2244(b)(2)(A), (d)(1)(C), 2254(e)(2)(A)(i),[6] and Rhode Island reasons that the phrase "collateral review" in §2244(d)(2) should be limited to proceedings of this nature. This argument has the same flaw as the argument just discussed. Just because the phrase "collateral review" encompasses proceedings that challenge the lawfulness of a prior judgment, it does not follow that other proceedings may not also be described as involving "collateral review."

Finally, Rhode Island contends that the purpose of the tolling provision is to allow a state prisoner to exhaust state remedies and that this purpose is not served when a prisoner's state application merely seeks sentencing leniency, a matter that cannot be raised in a federal habeas petition. This argument is based on an excessively narrow understanding of §2244(d)(2)'s role.

It is certainly true that *a* purpose—and perhaps the chief purpose—of tolling under §2244(d)(2) is to permit the exhaustion of state remedies, see *Duncan*, 533 U. S., at 178–179, but that is not §2244(d)(2)'s only role. The tolling provision "provides a powerful incentive for litigants to exhaust *all* available state remedies before proceeding in the lower federal courts." *Id.,* at 180 (emphasis added). Tolling the limitation period for all "collateral review" motions provides both litigants and States with an opportunity to resolve objections at the state level, potentially obviating the need for a litigant to resort to federal court.

—————

[6] All of these provisions refer to a new rule of constitutional law made retroactively applicable by this Court to "cases on collateral review."

If, for example, a litigant obtains relief on state-law grounds, there may be no need for federal habeas. The same dynamic may be present to a degree with respect to motions that do not challenge the lawfulness of a judgment. If a defendant receives relief in state court, the need for federal habeas review may be narrowed or even obviated, and this furthers principles of "comity, finality, and federalism." *Williams*, 529 U. S., at 436.

Rhode Island's interpretation of §2244(d)(2) would also greatly complicate the work of federal habeas courts. Rhode Island would require those courts to separate motions for a reduced sentence into two categories: those that challenge a sentence on legal grounds and those that merely ask for leniency. But this taxonomy is problematic. Even if a jurisdiction allows sentencing judges to exercise a high degree of discretion in selecting a sentence from within a prescribed range, it does not necessarily follow that the judge's choice is insulated from challenge on legal grounds. "[D]iscretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 416 (1975) (quoting *United States* v. *Burr*, 25 F. Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C. J.)). If the law of a jurisdiction provides criteria to guide a trial judge's exercise of sentencing discretion, a motion to reduce sentence may argue that a sentence is inconsistent with those criteria. In that sense, the motion argues that the sentence is contrary to sentencing law. See, *e.g., Ruffner*, 5 A. 3d, at 867 ("A trial justice considers a number of factors when determining a fair sentence[,] including the defendant's potential for rehabilitation. The defendant asserts that the trial justice did not consider defendant's participation in rehabilitative programs" (citations omitted)). We do not think that §2244(d)(2) was meant to require federal habeas courts to draw the sort of difficult distinction that Rhode Island's

interpretation would demand.

We also reject the argument that the meaning of the phrase "collateral review" should turn on whether the motion or application that triggers that review is captioned as a part of the criminal case or as a separate proceeding. See *Walkowiak* v. *Haines*, 272 F. 3d 234, 237 (CA4 2001). This interpretation of §2244(d)(2) would produce confusion and inconsistency.

For one thing, some "collateral" proceedings are often regarded as part of the criminal case. We have said, for example, that a writ of *coram nobis* "is a step in the criminal case and not . . . a separate case and record, the beginning of a separate civil proceeding." *Morgan*, 346 U. S., at 505, n. 4; see also *United States* v. *Denedo*, 556 U. S. ___, ___ (2009) (slip op., at 8) ("[A]n application for the writ is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired"). But we have nonetheless suggested that *coram nobis* is a means of "collateral attack." *Morgan*, *supra,* at 510–511 (internal quotation marks omitted); see also *Robinson*, 361 U. S., at 230, n. 14. Similarly, a motion under 28 U. S. C. §2255 (2006 ed., Supp. III) is entered on the docket of the original criminal case and is typically referred to the judge who originally presided over the challenged proceedings, see §2255 Rules 3(b), 4(a), but there is no dispute that §2255 proceedings are "collateral," see, *e.g., Massaro* v. *United States*, 538 U. S. 500, 504 (2003) (describing §2255 proceedings as "collateral"); *Daniels* v. *United States*, 532 U. S. 374, 379 (2001) (same).[7]

─────────────

[7] In other contexts not relevant here, there has been some confusion over whether §2255 proceedings are civil or criminal in nature. See, *e.g.,* Postconviction Remedies §3:5, p. 251 (2010) ("[T]here is a dispute over whether the [§2255] motion initiates an independent civil action or, instead, is merely a further step in the criminal prosecution"); 3 C. Wright & S. Welling, Federal Practice and Procedure §622 (4th ed. 2011). We express no opinion on this question.

Moreover, the methods of filing for postconviction or collateral review vary among the States. In the District of Columbia and fourteen States, the principal postconviction remedy is part of the original case; in other States, it is not. 1 Wilkes, State Postconviction Remedies and Relief Handbook §1:3, at 6–7. Given the States' "different forms of collateral review," *Duncan*, 533 U. S., at 177, the application of AEDPA's tolling provision should not turn on such formalities. See *ibid.* ("Congress may have refrained from exclusive reliance on the term 'post-conviction' so as to leave no doubt that the tolling provision applies to all types of state collateral review available after a conviction").

We thus define "collateral review" according to its ordinary meaning: It refers to judicial review that occurs in a proceeding outside of the direct review process.

\*    \*    \*

For these reasons, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–868

_____

## ASHBEL T. WALL, II, DIRECTOR, RHODE ISLAND DEPARTMENT OF CORRECTIONS, PETI-TIONER *v.* KHALIL KHOLI

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[March 7, 2011]

JUSTICE SCALIA, concurring in part.

The Court holds that the term "collateral review" in 28 U. S. C. §2242(d)(2) means review that is not direct, *ante*, at 5, and that a motion under Rhode Island's Rule 35 seeks collateral review, *ante*, at 9.  Because I agree with those conclusions, I cannot join footnote 3 of the Court's opinion, *ante*, at 9, n. 3, which declines to decide whether a Rule 35 motion seeks direct review.